3rd and last case, Novum Structures, LLC Novum Structures, LLC Good morning. My name is Jeff Slegel. I represent Novum Structures, LLC, the appellant in this matter. I'd like to welcome all of us from the intensive bankruptcy portion of our morning into the advanced contract law portion of the program. It may sound a little flip, but there is a method to my madness. I'd like to emphasize from the start that this case presents contract issues at law. There is a certain timbre to the district court's approach to the case that smacked of equity, that there was a need and a culpability that together gave rise to a remedy. But in fact, the background of this situation is firmly contract law and specifically the law of indemnity, where the indemnity is contractual, not equitable. I won't undertake a statement of the facts unless the court requires that at this point. No, I think we've all read the briefs. Can settle the indemnities disputed liability to a third party? And of course, the answer is yes. Anyone can settle their disputed liabilities to someone else, assuming that someone else will agree to the settlement. Can that indemnity, the person entitled to be indemnified, then proceed against their indemnitor and recover a judgment for damages based on the settlement of the law? I guess I'm a little confused at the outset. Maybe you're going to get to this, but I had thought from reading the briefs that we were talking about arbitration and we were talking about the fact that an arbitrator had made a decision and that you were relying on principles of race judicata to say that decision bound choked so that they were stuck with that amount. They couldn't go for any future glass that was broken. I haven't heard you say the word arbitration. Is that out of your argument now? It's not, although I'm treating, and I believe appropriately so, the arbitration as being the functional and jurisdictional equivalent of a lawsuit resulting in a judgment. In other words, the arbitration disposed of a claim by the appellee choked against the appellant novum and resulted in an award which was paid in the same way that and with the same race judicata effects. Right. There were four or five, four glass that broke. That all got settled with arbitration, how much you needed to pay. There's a new glass that gets broken, and I thought your argument was we're done. You had to make that argument in the arbitration, but all the indemnity and all of that, if you can bring me back to where the arbitration fits into this. That's what the arbitration was. Perhaps, and maybe I'll come back to the statement of issues and let me tell you, Your Honor, what the arbitration was not. Well, why don't you tell me? I'll just, I'll go with your argument then. What is your argument? It seems to be totally different from your brief, but let's hear what your argument is. Well, and I think your point is well taken. The arbitration, and of course, we're talking about a wall of glass. We have windows here except the entire wall on the front of the Coliseum in Athens. And some of those individual units, the glass broke. Now, what we could have had but did not have is the owner turning to the general contractor and saying, regardless of whether the warranty has expired, these individual pieces of glass, numbers 37, 98, and 152, were defective from the beginning. And therefore, they're not subject to warranty limitations and you have to fix them because they were never compliant. And then the general contractor could have sought to be indemnified against those breaks, those three breaks, by the subcontractor Novum. And that could have been resolved. But that's not what we had. What we had was there were breaks and the owner looked at that wall and said, the whole thing is unacceptable and non-compliant. It's defective and deficient. And you have to go back to the mutual release and settlement between Choate and the owner to get into that. The owner is saying the whole thing's wrong. And we thought all the glass was going to be laminated. And it's not actually recited in the settlement agreement. But they were also saying some of the glass, all of the front-facing glass, I'm sorry, interior glass on the wall is improperly sourced. And therefore, none of it's complying. This is not a warranty issue. It's all defective and you have to replace it. Choate and the owner entered into negotiations, to which Novum was not a party, that resolved that issue. And that was a conditional mutual release and settlement agreement. And in that mutual release and settlement agreement, the owner and Choate reached an agreement that said, okay, we, Choate, are going to put a protective film over the exterior of this wall, all the pieces of glass, which will provide an aspect of safety that was not provided for in the contract. None of the film was contemplated in the original contract. This is a settlement to resolve. Let me get, why do you think you'd win here? Maybe let's get to the point. Why, what is your argument as to why you don't have to pay for this future glass breaking? Well, because we're not talking about individual pieces of glass where the arbitration was not about individual pieces of glass. It was about indemnity for the settlement agreement, which takes me back to my statement of the issues, which is if someone entitled to indemnity settles an obligation, can they be indemnified for the settlement? That is, if I'm entitled to indemnity for my employee's torts, and my employee commits a tort, and I settle with the injured party, and I've now liquidated that liability, can I receive, can I be indemnified for the terms of the settlement? Because I've converted that third-party liability into a contractual liability, which is the settlement. In other words, Choate converted its liability to the owner on this project for problems with the glass wall into a contractual agreement, which had its own terms, which were brand new. Now, in my tort example, which is where you're going to— The answer is the first four, yes. I mean, the arbitrator decided that whatever damages were left over, you all had to pay. The answer to that was yes. You're saying the answer now to this new broken piece of glass is a different answer. I'm saying it's subsumed within the settlement agreement. The owner did not call up Choate when this new piece of glass broke and say, a piece of glass broke, it's defective under the original contract, and we can prove it, so you're going to have to replace it. What they said was, I can guarantee this, we resolved this in a settlement agreement, and you warranted the glass against breakage, and the terms of the warranty are in here, and it's a warranty term, so it doesn't say if it breaks because of an inclusion. It says if it breaks, unless it is plainly and evidently the result of misuse by UGAA, the owner, vandalism or fire, tornado, hail, hurricane— Like you're stuck with that provision. You're saying on the warranties, if it breaks, your client's stuck with doing something to remedy that. I'm saying we've already paid for that because it's part of the settlement agreement, and we indemnified Choate for the settlement agreement. You can't—the settlement agreement's not divisible. It's one liability. This kind of takes us back— So are you saying as a matter of law, the arbitration had to be coextensive with the settlement agreement? Is that your argument? Yes, effectively, because Choate sought indemnity for its liability to the owner, which had been reduced to a settlement. Well, what supports that argument in the record? The fact that the arbitration award refers to the settlement, and the fact that we paid for the film, which the installation of film on the glass only came about in and as part of the settlement agreement. It didn't exist prior to that. It seems to me that Choate may be right that you're confusing res judicata with collateral estoppel. In other words, the common issue would be whether under the subcontract, Novum is liable to Choate. But that being said, you still could have individual breaches of contract, which are the individual breaks of glass, and the incurment of cost, which then is the claim that you make under indemnification. How am I wrong here? You would have been right if there hadn't been a settlement agreement. In other words, that was my statement about what did not happen in this case. What did not happen in this case is the owner did not contact Choate originally and say, there have been two, three, four, five breaks of glass. And each of those breaks is the result of a defect in that particular piece of glass. And therefore, you have to fix it as a non-complying performance regardless of the expiration of the warranty. And Choate did not turn around then and say, in the arbitration, Novum, you must indemnify us against the breaks of that, that, that, and that piece of glass. And that is not the award that Choate got in the arbitration. Because what the owner said is, it's all wrong. Some of it's broken. You have to replace it. There was a settlement that went beyond the terms of replacing defective components, if you will, pieces of glass, individual pieces. You're talking about pieces of glass. Well, the settlement I'm reading, the settlement was that Choate agreed to apply a film solution over all the existing glass at UGA. And they also agreed to remove, replace, and refilm any further breaks for a period of five years at no cost. So this was one of those future breaks. That's right. And your position is, you would have had to indemnify them for the ones that had already broken. But even though they settled to take care of future breaks, you don't have to indemnify them for those. I'm saying, I'm saying, I apologize, Your Honor. That's your bottom line. I'm saying we already did indemnify them. You didn't indemnify them for the ones that hadn't broken yet, because they hadn't broken yet. We indemnify them for the warranty pursuant to their liability. We've just had a bankruptcy case. In bankruptcy, a liability... Let me let you finish up, if you can give us your explanation, because we are going a little bit over. Take about 30 seconds. The liability for the current breaks was created in and existed from the settlement agreement for which Choate has been indemnified. In bankruptcy, bankruptcy law recognizes that liability exists even when the amount of the liability is contingent and unliquidated. Choate undertook warranty obligations. They could have proven up a value to those warranty obligations and recovered it in the arbitration proceeding. We have to presume that's the point of the doctrine of finality. Wouldn't that have been speculative as to how many additional pieces of glass were going to break within the five-year period? How did they know how much extra to ask you to pay? It's a matter of opinion, Your Honor, and this situation does arise. For example, I represent bonding companies and have for many, many years. If there is a default in a construction contract and the bonding company has to complete, the bonding company has to hire someone to complete that work. Well, part of the problem is that the owner expects the work to be warranted as well. So the bonding company may hire someone and say, you've got to complete the work and you have to warrant equivalent to the original. Let me interrupt you back to our case. If they had come forward and they had said, you know what, in arbitration, this is all the glass that's broken, but we think some more is going to break, and Mr. Arbitrator, you know, we'd like you to give us some more money because that might happen, you would have screamed bloody murder. You would have said, hey, there's been no glass broken. We're not going to, we shouldn't have to pay for it. Would that not have been your position? I would not have screamed bloody murder. That happens all the time. You could buy a warranty. You can buy a warranty. And, in fact, if you go to Best Buy and you buy a computer, they will try very hard to sell you a warranty. All right. I think we've got your position, so we've gone over and we'll give you a little more time in rebuttal. Thank you.  Mr. Hudson. Thank you, Your Honor. May it please the Court. I'm Kevin Hudson, and I represent Choate Construction Company. While I appreciate, Judge Carnes, that you didn't want a full recitation of the facts, I think that some recitation of the facts might assist in light of the appellant's argument, and I'd like to focus not only on those facts that are conceded by that which is not appealed, but also the facts that come directly out of the subcontract. What we have is the basketball coliseum at the University of Georgia, and it has a large glass wall, as you've heard about. There are over 330 lights. Lights are simply a term, L-I-T-E, for a large panel of glass. The problem with these lights is they contain something called nickel sulfide. Now, it's something you can see. It's made in the glass manufacturing process. As the glass cools, because it's tempered, which is designed to be a safety mechanism, as it cools, this little tiny piece of metal expands, and it expands sufficient to cause a 12-by-6 very heavy piece of tempered glass to shatter spontaneously. That happened five times, leading to the arbitration. On each of the five occasions, Choate invoked its subcontract provision, specifically Article 9, Paragraph 30, saying, Novum, you have a duty to defend and indemnify us for matters arising out of your work. And the phrase arising out of your work is absolutely critical to the analysis of indemnity. It's been litigated twice in cases that we cite. Since counsel's brought it up, I'll bring it to your attention. This argument really wasn't brief before, but let me at least give you the summary judgment argument. It's Nationwide Logistics v. Condor, found at 270 Georgia Court of Appeals, 277. And Robert and Company Associates is the case that started it. It was a Pinkerton and Law case in 1969, found at 120 Georgia Court of Appeals, 29. Those cases discuss that the phrase arising out of your work means in any connection with, in any relationship with, it is extraordinarily broad. And in particular, the Roberts-Pinkerton Laws case addresses the fact pattern that we have before us in the arbitration. Namely, a general contractor tenders the defense and indemnity to the subcontractor. The subcontractor says, not my problem. The general contractor has a serious issue with an owner that must be resolved, and thus the issue becomes, what is the general contractor to do? That's exactly what happened in Roberts. And in that case, the Court of Appeals said what the general contractor can do is it can go out and enter into a settlement agreement, and then the scope of the indemnity obligation is evaluated in those terms. What the Court of Appeals did not say is that that means that the subcontract ends. And that's important. The subcontract between Choate and Novum is an ongoing operational contract document, and it is tied to when a claim accrues. That accrual of claim concept is a concept that seems to be eluding Novum throughout its argument, but it is exactly what District Court May focused on in her determination of what the arbitration found. And she said that where the arbitration award concluded that it conclusively resolved all matters arising out of the subcontract or the settlement agreement, that was in the context of modifying the word claim. Now, her analysis is not challenged in this appeal. I find nothing in the brief that says why she got it wrong. And we believe that she got it right. She shows exactly— What you're, again, talking about is modifying claim is claim as against the four or five first pieces, like that it did not resolve all future breaks that might happen. That's exactly right because, as you pointed out, there is no ability for Choate, if we'd gone in there and said we want to be paid for all 330 lights because there's a prospect that it's going to break, that wouldn't be reasonable under either the Roberts scope of indemnity or under Georgia law with respect to what is speculative damages. We can only present that which constitutes a breach. And in order to have a breach of indemnity, something has to happen. A couple of things. One, you have to have a defective product. Well, they've conceded their product is defective for purposes of this appeal. That was the finding by Judge May in granting Choate's motion for summary judgment. It's not been challenged on this appeal. So you've got to have a defective product. Second, the owner has to make a demand of some sort to Choate about that, which happened. In this case, it happens for lights six and seven, self-executing in the context of the ongoing settlement warranty obligations. Third, Choate has to make a demand for indemnity and defense to Novum, which also happened without dispute in this case with respect to lights six and seven. And finally, fourth, Novum has to say no. Until Novum answers the question, Your Honors, as to whether it is going to honor its defense and indemnity obligation, until it tells us that, we don't have a breach of the indemnity obligation that Novum owes to Choate. And I think the fallacy and the logic is that somehow this settlement agreement paves over the entire subcontract. The opposite is the case. What the settlement agreement did is it resolved the defective work that Novum provided on this project. It resolved that claim to a point. But in order to resolve it, short of completely ripping out the entire curtain wall and putting it back in with laminated glass, which was the contention by the University of Georgia, in order to resolve it, Choate did two things. It put a safety film solution out there so that the good students of the University of Georgia and professors wouldn't be exposed to harm in the event there was a future break. Because when the five lights broke without the safety film, the glass rained down. And it was a significant issue, as you would expect. So that film doesn't fix the problem. The film is the safety solution, as counsel says. And there's a cost associated with that. And there was a lot of negotiation to get the University of Georgia to accept that. But they would only accept that in the context of if there are further breaks, which there have been, lights six and seven, if there are further breaks, you repair and you replace them. Otherwise, you have broken glass that's just hanging on film, which is not intended to hang there indefinitely. Aside from it's not an aesthetic issue, it's a danger issue. And it has to be repaired and replaced. And the only entity, which is why we got specific performance, also not challenged, but the first time in over 25 years of doing this that I've ever gotten specific performance. But the only reason we were able to do it is because this entity is the only one who can provide the necessary glass package. So there are no options. There's no other, you know, there's not a lemonade stand to go get this glass out of. It can only come from NOVA. So I think that as you look at the distinction, and you hit upon this, Judge Pryor, what the appeal was about was an argument that this is res judicata. The reason that it is not res judicata is that the claims that we are seeking and that were the subject of the district court's ruling in this case, for lights 6 and 7, could not have been presented below. They arise at the point of the breach, which is the four criteria that I walked you through, including Novum's refusal to honor defense and indemnity. And in that regard, we agree with respect to contract law, and we cite the court to the uwork.com case, which is in our brief at 321 Georgia Court of Appeals 584, that says that a breach cannot happen until there is a repudiation or renouncement of liability, which doesn't happen in this case until 6 and 7 are tendered to Novum and they refuse. And let's assume that we would agree with you on that, that res judicata is not applicable, that the arbitrator didn't decide anything about future breaks, and we start anew. So we start our conversation. But my understanding was you sort of rely on the arbitrator as a basis for finding them liable on 6 and 7 based on the arbitrator's decision. Is that accurate? What is your basis now at this point, leaving aside what the arbitrary did for saying now they're liable for 6 and 7? You're correct about that. And as is presented to this court, there simply is no appellate challenge to the basis of that argument because they do not challenge the award of summary judgment in Choate's favor for any reason other than the selection by the district court of collateral estoppel over res judicata. So if you look at this statement of issue, it simply refers to res judicata. But to answer your question more precisely, Judge Carnes, we say that this is an example of what I was taught would be an offensive use of collateral estoppel, and that is the context in which an issue has been presented and fully litigated. In this case, the issue is the obligation to indemnify and defend Choate in the context of this ongoing settlement obligation. And the issue that we further presented is that this glass was defective. Now, in this case, we presented evidence in the summary judgment that the glass was defective and it was not challenged. But that issue of the ongoing indemnity obligation would be as a matter of an issue preclusion, not claim preclusion. Issue preclusion would weigh in Choate's favor. So is your argument as an alternative basis, leaving aside issue claim preclusion, all of that, that because you presented what you would say undisputed material facts that the glass was defective, which would thereby trigger their obligations, they don't counter that, that that's an alternative and independent basis for upholding summary judgment? Yes, Your Honor, it would be, and I would cite to the subcontract Article 9, Paragraph 9, which says that the subcontractor shall remain responsible for repair, replacement, and all other costs associated with the correction of any latent defect relating to the work. And that provision is an ongoing provision. It is not set aside by the settlement agreement. It is consistent with the settlement agreement, just as the ongoing indemnity obligation that I cited at the beginning of this argument is not set aside by the settlement agreement. It is coextensive with the settlement agreement. And therefore, when something happens in the future, in this case the breaks of Light 6 and 7, that are not related to maintenance, they are spontaneous fractures, they contain nickel sulfide, that was the evidence that was presented and is not disputed in either the trial court or on appeal, when that happens, the subcontractor is still responsible for that. And otherwise, we would be left to do something that is not the law and that no plaintiff could succeed in, which is to say, we've got to get paid for all 330 lights, which as I said is untenable. I mean, that's in the millions and millions of dollars. That would have been the same as simply going to UGA and saying, okay, we're going to rip the whole thing out and replace the whole thing. I mean, it wouldn't have resulted in any settlement resolution. It, in effect, wipes out the settlement by virtue of trying to get paid because we don't know how many of these lights are going to break. We only know that at this point 7,000. Going forward, I would assume that Novum is not on the hook for infinity. Is there a period of time beyond which there are indemnification obligations? And if 30 years from now one of these lights break, what is the period, what is the expiration of their obligations? Is that set out in the contract? It is. It's not only set out in the subcontract, Your Honor, and that would be a six-year statute of limitations to run from the subcontract. So they're protected to some extent. In fact, they may be almost home free. I don't know how much time has passed, but they've got a six-year period of time. Is that correct? Yeah, we've got to get another year under the settlement agreement to see if we can get to the end, but it's only a five-year period that tends to run from the date of substantial completion, which is the same with Choate's responsibility. That was part of it. So it is not forever. It is a defined period of time. And independent of that, obviously, there's a statute proposed in Georgia that I think would intercede, but that's not even necessary here given the five-year specification. So our position is that— So you're saying the settlement agreement protects Novum as well? Yes. Because it's limited to five years? Yes. I'm also saying that the concept of a claim that had multiple parts, and in this case the owner's claim had multiple parts. Their original claim was we want the whole thing replaced. Well, that claim still existed to a point, but they changed it to say if we have further breaks, then we're going to have a claim for that if you don't fix it. And that, I think, protects Novum as well, Your Honor, because instead of Novum being responsible for the totality of improperly installing the entire glass wall, failing to laminate it, which is what the owner's allegation was, Novum has only had responsibility for the seven broken lights, of which it has only taken responsibility. After we fully went through an arbitration and got a complete award against them, that was the only time they paid for it. Two more lights break, which is less than the totality, and they're still refusing. And we're saying the subcontract didn't allow you to refuse before, the arbitrator told you you weren't allowed to refuse, and you're disregarding both. Hence the action. Let me just ask you a point of clarification, if my understanding is correct, that the parties don't challenge the preclusive effect of an arbitration award as an award. In other words, you're assuming that it would have preclusive effect for purposes of this appeal, and then you're just saying race judicata doesn't attach. Is that correct? Yes. And I believe the case law is consistent with that. Typically, an arbitration award is confirmed. In this case, it was not necessary to confirm it because it was paid prior to confirmation, but the award on its own was the dispute resolution mechanism, and therefore we believe it does have preclusive effect. And do the parties also agree that Georgia law applies here? We do. There's nothing else. Thank you. All right, Mr. Sligo. Thank you, Your Honors, and I appreciate the indulgence of a little extra time. I will try to be brief. As a contract lawyer, I have to start by saying that when you say the subcontract is coextensive with the settlement agreement, you have gone off the road in contract law, whereas the subcontract and the settlement agreement, to the extent that they deal with related subject matters, can be complementary to each other. They don't blend into some kind of hybrid agreement. The point of Novum's argument is that to the extent that the owner made a claim against Choate for problems with the glass and problems that went beyond what Judge Pryor pointed out were breaks of specific glass, why aren't we responding to issues of liability for breaks of specific pieces of glass when they arise? The reason is because the owner, as counsel for Choate emphasized, made a much more expansive claim against Choate for which Choate demanded that Novum indemnify Choate. And it was that, and Choate then, we all agree, it was a great thing, reduced that liability to a settlement that restated both what the owner would accept and what Choate would do with respect to that problem with the glass. And to the extent that the settlement made that statement, it displaced the subcontract. It's like a train on tracks. You can't have two trains on the same track. And the track is the track that has to do with the acceptability of the glass and responsibility for replacing breaks as they occur. And that is further illustrated by, as Judge Conway brought to light, the fact that the settlement agreement, in addition to creating Choate's obligation for a five-year warranty, also limits it and establishes the endpoint. The settlement can't be the origination of the endpoint of that liability after five years without having also created that liability in the first place. And finally, as to the, and we've had some discussions about this, concerning the fact that a warranty obligation, which is what Choate undertook as part of its promise to the owner in the settlement agreement, a five-year warranty obligation, is a liability that can be liquidated. And the example I would give would be that if a contractor, building a building, defaulted without completing it, the owner could sue that contractor for damages. And the damages would include the cost of completion and the cost of a warranty if warranty was part of the original contract. In other words, if the owner has to hire someone to complete the work and obtain a warranty from that completion contractor, the warranty has a value which can be liquidated and recovered ahead of the time when it's actually paid or incurred as a out-of-pocket loss. And the liability in this case that we're talking about was created in the settlement agreement. The liability to perform warranty replacement, a warranty that exists for five years in the settlement agreement and only in the settlement agreement, and that is the obligation for which Choate sought indemnity in the arbitration proceeding and for which they recovered an award that was paid. And it is a principle of law that when you have a unitary liability, even if all the damages or some of the damages may still be contingent or unliquidated, you only have one lawsuit on that liability. And that liability in this matter is the liability of Novum to indemnify Choate for that settlement agreement. Thank you. Thank you. We'll be in recess. All rise. Thank you. Thank you.